346 A.2d 761

In re ESTATE of Paul M. MILLER, Deceased.

Appeal of Robert A. REESER, Executor of
the Estate of Harold H. Reeser.

Supreme Court of Pennsylvania.

Argued April 7, 1975.

Decided Oct. 30, 1975.

324

Adam B. Krafczek, Robert K. Boland, Austin, Speicher, Boland, Connor & Giorgi, Reading, for appellant.

Jay N. Abramowitch, Miller & Murray, Reading, for appellee, Bank of Pa., testamentary co-trustee under will of Paul M. Miller, deceased.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

JONES, Chief Justice.

Paul Miller died testate on April 14, 1972. Harold Reeser, as executor,[1] filed a first and final account. The Bank of Pennsylvania, as co-trustee[2] with Mr. Reeser under the terms of the will, filed objections to the account for Mr. Reeser's failure to include in the inventory proceeds in the amount of fifty thousand dollars result-

---

1. Harold Reeser, the executor named in the will and the alleged donee, is now deceased. Robert Reeser was substituted both as executor and as appellant in this Court. At the time of suit, Harold Reeser was confined to a nursing home and gave all of his testimony by deposition.

2. Appellant contends that the Bank is not a party in interest, *citing Girt Estate*, 452 Pa. 156, 164, n. 7, 305 A.2d 372, 377 n. 7 (1973). However, in this case, unlike in *Girt*, the trustee is one whose trust is aggrieved by an order of the court.

ing from the sale of certain stock.[3] Mr. Reeser contended that the proceeds comprised an inter vivos gift from decedent to himself. The court below excluded most of Mr. Reeser's testimony as incompetent and determined that no gift had been made. This appeal followed.

The estate has the burden of initially showing *prima facie* ownership of the proceeds. *See Donsavage Estate, supra; Cutler's Estate,* 225 Pa. 167, 73 A. 1111 (1909). The proceeds in dispute resulted from the sale of stock registered in Mr. Miller's name and in his physical possession until seven weeks before his death. Mr. Miller authorized the sale of the stock and endorsed the stock certificate eight days before he died. Registration of the stock in his name and in his recent possession gave rise to a presumption sufficient to establish *prima facie* ownership in the estate. The burden then shifted to appellant to rebut the presumption and to establish by clear and convincing evidence that a valid gift was made. *Donsavage Estate, supra; Martella Estate,* 390 Pa. 255, 135 A.2d 372 (1957); *Brightbill v. Boeshore,* 385 Pa. 69, 122 A.2d 38 (1956); *Weaver v. Welsh,* 325 Pa. 571, 191 A. 3 (1937).

Appellant argues that Mr. Reeser should have been found fully competent to testify in regard to the circumstances surrounding the transfer of the stock certificate from decedent to Mr. Reeser. The court below found the witness incompetent under the Dead Man's Act. Act of 1887, P.L. 158, § 5(e), 28 P.S. 322.[4] The

3. Objection to the inventory is the proper procedure under the Fiduciaries Act of 1949. Act of April 18, 1949, P.L. 512, *as amended,* Act of February 23, 1956, P.L. (1955) 1084, § 3, 20 P.S. § 320.-405. *See also Donsavage Estate,* 420 Pa. 587, 218 A.2d 112 (1966).

4. The appellant would have us consider the validity of the Dead Man's Act, which has been subject to disapproval by many authorities. *See* American Bar Association's Committee on Improvement in the Law of Evidence report, 63 A.B.A.Rep. 581 (1938); Pennsylvania Bar Association's Committee on Civil Law report, 58 Annual Rep. of Pa.Bar Ass'n. (57th Annual Meeting),

court, however, made findings of fact supported by competent evidence that Mr. Miller had endorsed the stock certificate without naming any transferee and that Mr. Reeser had possession of the stock upon death of Mr. Miller. We indicated in *Donsavage Estate, supra,* that where endorsement of the certificate in blank is coupled with possession, the transfer is *prima facie* valid for the purpose of rendering the donee's interest not adverse to that of decedent. Such a showing is not necessarily sufficient to conclusively establish a gift by requisite proof but will permit the testimony to be heard. *Cf. Thomas v. Waters,* 350 Pa. 214, 219, 38 A.2d 237 (1944); *Carr Estate,* 371 Pa. 520, 92 A.2d 213 (1952). The ruling in *Donsavage Estate* has been followed by lower courts in recent years. *See Beard Estate,* 22 Fiduc.Rep. 438 (1972); *Thompson Estate,* 23 Fiduc.Rep. 45 (1972), *reversing* 22 Fiduc.Rep. 430 (1971).

■ Mr. Reeser and Mr. Miller, close friends, both widowed, spent most of their time together. When Mr. Miller was hospitalized several months before his death, Mr. Reeser assisted him in taking care of his affairs and visited him daily. Seven weeks before Mr. Miller died, he gave up possession of the stock certificate to Mr. Reeser, who had possession at Mr. Miller's death. Shortly before death, Mr. Miller endorsed the certificate naming no transferee and authorizing the sale of the stock.[5]

38–39 (1952); Federal Rules of Evidence, effective July 1, 1973; 2 Wigmore, Evidence 697, § 578 (3d ed. 1940). *See also* Carpenter, The Dead Man's Statute in Pennsylvania, 32 Temp.L.Q. 399 (1959); *Note,* The Pennsylvania Dead Man's Rule: A Decedent's Delight, 11 Duquesne L.Rev. 313 (1973). However, since appellant raises the issue for the first time on appeal in this Court, we do not address it.

5. No confidential relationship with Mr. Reeser or undue influence was alleged by appellees. Paul Miller and Harold Reeser were close companions for years. Mr. Miller was alert and responsive at all times. At the signing of the stock certificate, witnessed by two hospital personnel, he responded affirmatively to the hospital representative's query as to whether he wished to convert the stock to cash.

Mr. Stauffer, the treasurer of the Bank of Pennsylvania, testified that Mr. Reeser brought the certificate to the bank two days before decedent's death and instructed Mr. Stauffer to use the proceeds from the sale to purchase a certificate of deposit for fifty thousand dollars in the joint names of decedent and Mr. Reeser and to place the remaining several thousand dollars in decedent's own checking account. Appellee argues that the resulting inference that explanatory words accompanied the transfer to Mr. Reeser defeats the presumption of a *prima facie* gift because in earlier cases this Court explained that where the parties are not strangers but are more intimate, *in the absence of proof of explanatory words accompanying the voluntary delivery* an intention to give may be presumed. *Chapple's Estate*, 332 Pa. 168, 170, 2 A.2d 719 (1938) ; *Weaver v. Welsh*, 325 Pa. at 580, 191 A. at 8. Here, any such explanatory words would be consistent with a presumption of an intention to give. Mr. Reeser's testimony was competent in full and ought not to have been excluded from the factfinder's consideration. It still remains to be determined whether, accepting the testimony, there was sufficient evidence which might have supported a finding of a valid gift.

The success of a claim against a decedent's estate depends upon a clear and convincing showing of an intention to make an immediate gift and, where a joint tenancy is intended, such actual or constructive delivery as to invest in the donee so much dominion or control of the subject matter of the gift as is consonant with a joint interest or ownership therein. *Parkhurst Estate*, 402 Pa. 527, 167 A.2d 476 (1961) ; *Amour Estate*, 397 Pa. 262, 154 A.2d 502 (1959). Even accepting all of Mr. Reeser's testimony, the evidence reveals that no gift was completed before decedent's death.[6] The Bank had re-

6. Mr. Reeser testified that Mr. Miller said that he was giving the stock to Mr. Reeser. When the certificate arrived by mail, Mr. Reeser delivered it to Mr. Miller who held it for a couple of days.

ceived only oral instructions from Mr. Reeser as to what was to be done with the proceeds of the sale of stock. It received no instructions from Mr. Miller directly. No certificate was purchased or even authorized by Mr. Miller to be purchased in joint names prior to death. The Bank was not authorized to do anything with the proceeds and properly held them in escrow. Decedent's sudden death precluded completion of a gift, if such was intended. The court below therefore was correct in sustaining objections to the account and directing the appellant to file a supplemental inventory including the proceeds as an asset of the estate.

Decree affirmed. Costs on appellants.

ROBERTS, POMEROY and NIX, JJ., concur in the result.

MANDERINO, J., dissents.

Mr. Miller gave the certificate to Mr. Reeser saying, "I want you to have this." However, Mr. Reeser refused to accept it outright. He agreed to accept it under the condition that he sell the stock, reinvest fifty thousand dollars in other stocks and place what remained in Mr. Miller's checking account for his medical care. He also testified that dividends were to be deposited in Mr. Miller's account and, if Mr. Miller died, what remained from the certificates was to go to Mr. Reeser. Mr. Miller gave the certificate to Mr. Reeser unendorsed. Mr. Reeser carried the certificate around with him for several weeks. Mr. Miller subsequently endorsed the certificate and authorized its sale. Mr. Reeser took the certificate to the bank to be sold; after Mr. Miller died, he returned to the bank to obtain the proceeds and was refused.