574 A.2d 77

**In re ESTATE OF Dr. Ronald G. LIVINGSTON, a/k/a Ronald Livingston, Deceased.**

**Appeal of Margaret LIVINGSTON.**

Superior Court of Pennsylvania.

Argued Aug. 23, 1989.

Filed March 26, 1990.

Reargument Denied June 1, 1990.

James W. Carroll, Jr., Pittsburgh, for appellant.

William Radcliffe, Uniontown, for John Livingston, participating party.

Before CAVANAUGH, BROSKY and ROWLEY, JJ.

CAVANAUGH, Judge:

This is an appeal from an order dismissing exceptions to a decree nisi in the Court of Common Pleas, Fayette County. Appellant presents two issues for our review. First, whether the appellant, who is the surviving spouse of the decedent and was the administratrix of decedent's estate, filed a timely claim against the estate; and second, whether the appellant's claim is barred by the doctrine of laches. For the reasons that follow, we affirm the order of the lower court.

Ronald G. Livingston, the decedent, died on August 9, 1980, survived by his spouse, Margaret L. Livingston, the appellant herein, and his father, John L. Livingston, the appellee herein. At his death, the decedent was separated from his wife and resided with his father. Letters of Administration were granted to Mrs. Livingston on August 18, 1980.

On or about August 20, 1980, Mrs. Livingston inventoried a safe deposit box in the name of the decedent which contained certificates of deposit, some of which were in the joint names of the decedent and Mrs. Livingston, and some of which were in the decedent's name alone. It is the certificates which were in the decedent's name alone at the time of his death which are the subject matter of this appeal.

After she inventoried the safe deposit box, Mrs. Livingston had the certificates registered in the name of the decedent's estate. Thereafter, the inheritance tax return was prepared, signed and filed by Mrs. Livingston, listing the certificates of deposit as estate assets. On November 6, 1980, not very long after the administration of the estate commenced, Mrs. Livingston paid herself an administratrix fee of $15,108 and paid an attorney fee of $15,108, both of which were made from estate funds. It appears that Mrs. Livingston performed no further duties as administratrix of the estate and she did not file an inventory, an account, or complete the administration of the estate.

On June 9, 1987, almost seven years after the decedent's death, Mrs. Livingston filed a claim dated May 22, 1987 against the estate. The basis of her claim was that the certificates were entireties property at the time of the decedent's death; that because she was the surviving tenant, she was entitled to all of the money on deposit in the certificates; and that the certificates were, therefore, not estate assets. On June 15, 1987, decedent's father, John L. Livingston, petitioned the court to remove Mrs. Livingston as administratrix because of the neglect of her duties and conflict of interest. On June 16, 1987, Mrs. Livingston was

removed as personal representative and attorney Daniel L. Webster was appointed as administrator d.b.n. Attorney Webster filed an inventory, first and final account, and petition for distribution on January 7, 1988. Mr. Webster's inventory treated the certificates as property owned solely by the decedent at the time of his death. The proposed distribution was $20,000 plus half of the residue to Mrs. Livingston and half of the residue to the decedent's father.

Mrs. Livingston filed objections to the account and petition for distribution based on her claim that the certificates were entireties property.

The lower court, in denying Mrs. Livingston's objections relied on *Estate of Cohen*, 469 Pa. 29, 364 A.2d 888 (1976). In *Cohen, supra,* the executrix alleged that the orphans court erred in disallowing her claim against the estate because the executrix failed to give notice of her claim against the estate until more than six years after loans, which were the bases of executrix's claim, had been made. The supreme court affirmed, holding that the executrix did not toll the six-year statute of limitations.

> Appellant did nothing under the above section to toll the statute of limitations. Appellant argues that since she was the personal representative of the estate, she was required to do nothing since she would have been giving notice to herself, a fruitless act. We do not agree with appellant's position. Section 3384 was designed to give all persons who have an interest in the estate notice of possible outstanding claims. While the letter of the act does not cover the situation in the instant case, the spirit of the law required that appellant give notice of her claim and her failure to do so bars her claim. See *Kuhlman's Estate. Rehfuss's Appeal*, 180 Pa. 109, 36 A. 566 (1897).

*Id.* 469 Pa. at 34, 364 A.2d at 891.

Thus, our Supreme Court has clearly mandated that personal representatives of estates, who also have claims against the estate, must give notice consistent with the provisions

set forth in 20 Pa.C.S.A. § 3384 in order to toll the applicable statute of limitations.[1]

Mrs. Livingston clearly was aware that the certificates were the property of the estate. She registered the certificates in the name of the estate and paid the inheritance tax on the certificates in her capacity as administratrix. At no time did Mrs. Livingston claim the certificates to be entireties property until her claim against the estate was filed almost seven years after the filing of the tax returns. Furthermore, the record indicates that in Mrs. Livingston's petition to file a first and final account and to continue as administratrix, filed in June of 1987 after decedent's father filed petitions to remove her as administratrix, she again listed the certificates as estate property. The argument asserted by appellant on appeal is totally inconsistent with her position during the time she acted as administratrix of the estate. Given the position stated by our supreme court in *Estate of Cohen, supra*, it is simply too late for Mrs. Livingston to now assert a new claim that the certificates are entireties property.

We agree with the trial court that in the circumstances of this case the proper statute of limitations to be applied is 42 Pa.C.S.A. § 5527 which provides for a six-year period.[2] To

---

1. 20 Pa.C.S.A. § 3384 provides:

   "(a) Written notice.—Written notice of any claim against a decedent given to the personal representative or his attorney of record before the claim is barred shall toll the statute of limitations.

   "(b) Acts equivalent to written notice.—Any of the following acts by a claimant shall be equivalent to the giving of written notice of a claim to the personal representative:

   "(1) Instituting proceedings to compel the filing of an account.

   "(2) Bringing an action against the personal representative in any court having jurisdiction of the claim and having the writ or pleading duly served on the personal representative.

   "(3) Substituting the personal representative as a defendant in an action pending against the decedent.

   "(4) Receiving a written acknowledgment by the personal representative or his attorney of record of the existence of the claim."

2. 42 Pa.C.S.A. § 5527 provides in pertinent part:

   **§ 5527. Six year limitation**

decide if the claim filed on June 9, 1987 was timely filed, we must determine when the statute of limitations began to run. Various starting dates have been proposed by the parties, the date of death (August 8, 1980), the date letters of administration were granted to the administratrix (August 20, 1980), the date the safety deposit boxes were inventoried and the certificates of deposit discovered (August 20, 1980), and the date the inheritance tax return was filed (November 6, 1980). No matter which of these events commenced the running of the statute, the claim filed June 9, 1987 is beyond the six-year limitation and is barred.

■ Counsel for Mrs. Livingston mailed a letter dated February 18, 1986 to the attorney for the estate, which Mrs. Livingston now alleges tolled the statute. However, that correspondence does not state a claim against the estate. It is addressed to counsel and suggests that alleged errors made by counsel in the estate administration process had given Mrs. Livingston in her capacity as "heir and surviving spouse" a potential claim against counsel. That letter concludes, "We are not anxious to make a claim against you for this amount, so we are proposing the above resolution."

In order to toll the statute of limitations, an individual with a claim against an estate must do one of the acts specified in 20 Pa.C.S.A. § 3384 entitled Notice of Claim. Mrs. Livingston, as heir and claimant, did not do any of the acts specified in that section. The correspondence of February 18, 1986 to the attorney of record for the estate was ineffective as it failed to state a claim against the estate. Therefore, Mrs. Livingston's failure to do any of the enumerated acts to toll the statute bars her claim.

■ Furthermore, Mrs. Livingston's claim is barred by the doctrine of laches. The application of laches depends on

The following actions and proceedings must be commenced within six years:

(6) Any civil action or proceeding which is neither subject to another limitation specified in th is subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation).

See also *Clemmens v. Security Peoples Trust Co.,* 24 D & C 3d (1981).

whether the complaining party is guilty of a want of due diligence in failing to assert his rights, which works to another's prejudice. *In re Estate of Dorothy M. Doerr*, 388 Pa.Super. 474, 565 A.2d 1207 (filed Oct. 31, 1989); *In re Estate of Marushak*, 488 Pa. 607, 413 A.2d 649 (1980); *Leedom v. Thomas*, 473 Pa. 193, 373 A.2d 1329 (1977). Laches requires not only a passage of time, but also a resultant prejudice to the party asserting the doctrine. *In re Estate of Dorothy M. Doerr, Id.; Young v. Hall*, 421 Pa. 214, 218 A.2d 781 *citing* (1966), *Miller v. Hawkins*, 416 Pa. 180, 205 A.2d 429 (1964). Clearly laches is applicable because during the almost seven years that Mrs. Livingston was administratrix, the decedent's father was denied use of his share of the estate. Finally, a review of the record finds no reasonable basis why Mrs. Livingston did not assert her claim at an earlier date.

We add the following in reply to the Dissenting Opinion of Brosky, J.: The dissent states at, page 215: "The majority's focus on what they believe to be an inordinate delay in the filing of an inventory seems to me nothing more than a smoke screen ... Appellant is not an attorney and could hardly be expected to understand the nature of her interest in the certificates and could easily have been under certain legal misapprehensions regarding them."

The appellant was represented by counsel from the outset of the estate's administration and at the very beginning of the administration, she paid herself, from estate assets, a substantial administrator's commission of $15,108.00 and a counsel fee of the same amount to her lawyer.

Notwithstanding the delay of many years in filing an inventory by appellant, she nevertheless prepared an inventory in or about June, 1987, when she was still attempting to continue as administratrix, that listed the certificates in question as estate property. It appears therefore that the appellant herself treated the certificates of deposit in question for some seven years as assets of the decedent.

The appellant filed an inheritance tax return setting forth that the certificates were property of the decedent and

subject to inheritance taxes. The Inheritance and Estate Tax Act, 72 Pa.C.S. § 1736(a) provides in pertinent part:

**(a) Persons responsible for returns.—**

The following persons shall make a return:

(1) The personal representative of the estate of the decedent *as to property of the decedent* administered by him. (Emphasis added.)

Inheritance taxes were paid by the appellant on assets belonging to the decedent, including the certificates which she now claims. A claimant, as appellant, may not administer an estate for many years, pay herself an administrator's commission and substantial lawyer's fees, prepare an inheritance tax return and pay taxes based on assets as being decedent's property, and then after she is removed from serving as a personal representative for conflict of interest, and after the statute of limitations has run, take a totally inconsistent position that the assets didn't belong to the estate after all, but were in reality, hers. The law properly does not countenance such activity.

We do not understand the reasoning of the dissent in the following statements at pages 215 & 216:

Furthermore, as an adminitratrix of the estate it would not necessarily be inconsistent for her, in her administrative capacity, to list the certificates as estate assets and then turn around and claim them, acting in her own self interests, as a survivor. *In fact, given that the certificates were titled in decedent's name alone at the time of his death, this may have been the most legally expedient approach to take in keeping with her fiduciary duty as executrix of the estate.* (Emphasis added).

It seems to us that the appellant would clearly violate her fiduciary duty in listing certificates of deposit as assets in the inheritance tax return which were not assets of the decedent's estate, and to pay inheritance taxes from the estate which would not have been due, if the appellant's contention is correct.

Finally, the dissenting opinion states at slip opinion, page 209:

However, the majority appears to have little difficulty in concluding that the term "claim" encompasses a contention that personal property has been wrongfully included in an inventory and appraisement as property of the decedent.

The appellant contends that the certificates of deposit were "wrongfully included" in the inventory and appraisal and yet, the inheritance tax return she filed and the inventory she prepared and proposed filing, included these same assets.[3]

We affirm the order of the court below.

BROSKY, J., files dissenting opinion.

BROSKY, Judge, dissenting.

I dissent. The issue in this case, reduced to its most essential form, is whether a dispute as to ownership of property, listed by an administrator or executor of an estate in an inventory as estate property, must be presented as a claim within the dictates of 20 Pa.C.S. §§ 3381–3389. The majority concludes that it must and also finds appellant's assertion of ownership to be outside of the applicable statute of limitations, thus, time barred. I believe there is a total lack of authority and logic to support this position, thus, my dissent.

Appellant was the wife of Ronald Livingston who died intestate on August 9, 1980. Appellant was issued Letters of Administration on August 18, 1980. On August 20, 1980,

---

3. Appellant's proposed account shows that on November 16, 1980, Pennsylvania Inheritance taxes were paid in the amount of $13,883.82 and in 1981 the balance of inheritance taxes was paid in the amount of $612.60. If the certificates in question belonged to the appellant, rather than the decedent, most of the inheritance taxes would not have been due. Appellant's proposed inventory listed the entire estate as valued at $163,844.06 which included $141,800.00 of certificates which she now contends belong to her. The estate would have had a gross value of only $22,000.00 if appellant's contention is correct, and counsel fee and administrator's commission amounted to over $30,000.00.

a safe deposit box registered to decedent was inventoried and found to contain, among other things, eleven certificates of deposit in the name of decedent alone. There was substantial evidence to bolster appellant's contention that the certificates were funded with certificates of deposit in like sums titled in appellant's and the decedent's names. These certificates are the subject of the current litigation.

Administration of the estate proceeded for several years although, as late as February 18, 1986 neither an inventory nor a final account had been filed. At that time, Ruth Warman, Esquire, the attorney for the estate received a letter from James Carrol, Esquire, indicating that he had been retained by appellant to protect her interests as an heir and surviving spouse of the decedent. Appellant subsequently filed a petition to continue as administratrix and for approval to file an inventory and account which was countered by a petition for removal of personal representative filed by John Livingston, father of the decedent and the other primary party in interest. The court, recognizing appellant's conflict of interest, issued an order removing appellant as administratrix and appointing another individual administrator.

In January, 1988, an inventory and appraisement, first and final account and petition for distribution and proposed decree were filed. The inventory listed as estate property all property bearing the name of the decedent alone, including the certificates of deposit. On or about February 26, 1988, appellant filed objections to the petition for distribution alleging that the certificates of deposit were created from, or consisted of, marital funds and retained an entireties status up until the death of the decedent and, thus, passed by survivorship to appellant. John Livingston filed an answer to the objections claiming the statute of limitations barred appellant's claim against the estate. A hearing was held on the objections and a decree nisi was filed denying wife's claim on the limitations grounds. Exceptions were filed but dismissed, leading to this appeal.

It should be noted, initially, that the term "claim" is not defined at title 20, nor has the majority offered a definition of that term, of either their own devolution or from other authority, within the meaning of section 3381 et seq. However, the majority appears to have little difficulty in concluding that the term "claim" encompasses a contention that personal property has been wrongfully included in an inventory and appraisement as property of the decedent. They have little difficulty making this conclusion even despite the fact that their holding here would work to require such an assertion be made even before the inventory is filed.

Even though the term "claim" is not defined, there are indications that the term is meant to encompass, or has been applied consistently to, claims for monetary compensation allegedly owed by the decedent to the "claimant", grounded in either contract or tort. For instance, section 3383 states that the death of an individual shall not stop the running of a statute of limitations applicable to *any claim against him.* The language "claim against *him* " certainly implies relevance to personal actions against the decedent. Furthermore, the official comment to § 3386 states: "[t]he word "claimant" rather than "creditor" is employed to include persons claiming on a tort as well as those claiming under contract." It is very noteworthy that both actions mentioned are personal actions against the decedent, tort and contract. Thus, the clear implication from sections 3381–3389 is that there are limitations periods applicable to personal claims of debt or liability against the decedent, whether based in tort or contract. However, these sections do not necessarily compel a conclusion that disputes over title to property are encompassed within them.

There is a substantial difference in the nature of a claim against another individual personally and a "claim" that one is the rightful owner of certain property. First of all, claims against a person, are exactly that. They relate to a person's legal liability to another. Furthermore, claims against a decedent personally will be accounted for as debt

of the estate and the filing of a claim helps to establish, presumptively, the extent of the decedents legal debts. As indicated above, such claims against the person are subject to a limitations period which continues to run despite the death of the decedent. In contrast, disputes as to ownership of property are not, in their true essence, personal against another. They are essentially *in rem*, relating to the status of ownership or title of the subject property, a status which will not likely change over time. Further, they relate to the assets of the estate, and, as will be established, *infra*, the inventory acts as a vehicle for the presumptive establishment of the extent of estate assets.

There is nothing illogical in requiring a written claim of debt against the decedent's estate while allowing objections to claims of ownership to await such time as an inventory and appraisement is filed. Quite curiously, in contrast to the great deal of authority and indications that the term "claim" refers to personal claims against the decedent, the majority has not offered any authority or other factor indicating that it encompasses a dispute over ownership of property and the propriety of including it in an inventory. This fact alone should lead one to question the majority's conclusion. When one cuts through the rhetoric, the majority is relying, in essence, upon the general appealability of the proposition that anything that could be considered a "claim" is encompassed within that term in §§ 3381–3389.

Appellee argued below that the general provisions of 20 Pa.C.S.A. § 3381 to § 3389 required the filing of a claim of ownership in the certificates. When appellee's argument is closely scrutinized it becomes apparent that he predicates this position on a characterization of appellant's claim as a personal action against the decedent. Appellee, perhaps rather craftily, focuses on what he contends appellant would be required to show in order to be successful in her quest. Specifically, appellee asserts that appellant would have to show "wrongful appropriation" of marital funds on the part of decedent in order to prevail. Thus, by focusing attention on a "wrongful appropriation" of funds, appellee

has made appellant's claim to sound as a personal action against the decedent. This is not without utility, as such actions, in general, *are*, as just illustrated, subject to the provisions set forth at 20 Pa.C.S.A. §§ 3381–3389.

By characterizing appellant's action as a personal one against the decedent, appellee has been able to mask the true nature of the inquiry which would be required. As indicated above, what has been lost in the development of appellee's argument is the fact that disputes over owner-ship of property are essentially *in rem* proceedings. Al-though perhaps revolving around actions of the parties, the claim is not against another individual personally, but is a claim in the property itself. Clearly, appellant's claim can be classified in this manner.

Contrary to what appellee has implied, the crux of appel-lant's case here is not that appellant is entitled to damages as a result of decedent's wrongful appropriation of marital funds. Rather, the crux of appellant's case is that despite the decedent's effort to appropriate the funds to his own exclusive use, such effort did not destroy the entireties nature of the property. Even though titled in decedent's name alone, the certificates retained entireties status and passed to appellant upon decedent's death (see discussion *infra*). Clearly this claim is not a personal claim of debt against the decedent.

There is substantial merit to appellant's position. If appellant can demonstrate that the certificates were funded with entireties property there is ample authority to indicate that the certificates would remain entireties property, and thus would have passed to appellant by operation of law upon the death of the decedent, despite any contrary intent of the decedent which could be inferred from the decedent's efforts to substitute certificates bearing his name alone for the ones previously owned jointly. Cases particularly on point are, *Cohen v. Goldberg*, 431 Pa. 192, 244 A.2d 763 (1968) and *Cingerman v. Sadowski*, 513 Pa. 179, 519 A.2d 378 (1986).

Although, as has been abundantly demonstrated, the procedure for making a claim of debt against the estate is rather straightforward and adequately defined, the procedure for challenging the characterization of property as estate property or non-estate property is far less clear. With regard to the procedure for challenging title to property, our Supreme court stated:

> The function and object of an inventory and appraisement in a decedent's estate is to fix *presumptively* the existence of property in the possession of the fiduciary and the value thereof. This is only *prima facie* evidence of ownership and value. Such listing does not affect the true ownership and value. [Authorities cited]. The question of ownership is of interest to creditors, federal and state taxing authorities, and others. Such title, therefore, should not be finally determined until after an audit, with due statutory notice....

*Estate of Donsavage*, 420 Pa. 587, 218 A.2d 112, 116 (1966). Although this passage does not expressly negate the need for the filing of "claims" of ownership to disputed property, neither does it set forth a requirement for such a filing. However, by setting forth the purpose of the inventory, to presumptively set forth the existence and value of estate property, it would seem to logically follow that requiring a formal assertion of ownership of property prior to the filing of the inventory would be superfluous as there could be no conflict as to ownership or title to property until such time as the estate formally asserted title or ownership to it.

Perhaps not coincidentally, the majority has provided us with no explicit language from statute or case law which establishes the need to make a written claim of ownership of property in the executor's possession prior to the filing of an inventory and appraisement. The lone case cited by the majority and relied upon to dispose of this issue, *Estate of Cohen*, 469 Pa. 29, 364 A.2d 888 (1976), dealt with a claim for money allegedly owed the claimant pursuant to a loan made to the decedent. In other words, a personal debt. Of

course, this would be an action in contract and would fall squarely within the commentary to § 3386.

Furthermore, as illustrated above, the inventory does not affect true ownership of the property. If the property truly belongs to one, it would seem incongruous to require one to file a claim for it, particularly before it is known whether the executor or administrator is going to assert ownership of it or otherwise contest one's right to it. As a practical matter, it may be advisable for an individual to notify the administrator of one's position where it is not obvious. However, I cannot agree that there is an applicable statute of limitations for asserting a claim of ownership which runs prior to the development of a formal dispute or inconsistency in such claims of ownership. Such a rule would be logically incongruous.

The majority has strained their credibility by making a simplistic generalization in an apparent hope that it will satisfy the demands of a seemingly complicated legal question, all the while providing no authority on point. The majority has failed to cite one case where an exception to an inventory asserting a dispute as to title of property was disallowed for failing to have lodged a prior written claim within some certain period of time; and although there are numerous cases available where personal actions or "claims" against the estate have been found barred for failure to file a timely written claim, the majority has not offered one case where the same holding was applied to an assertion of ownership of an asset claimed by the estate to be property of the decedent's. Their failure to provide authority on point should lead a reasonable jurist to question their result.

In contrast, appellant has supplied numerous cases which indicate that disputes to title of property are made by exception to inventory and account. Appellee asserts that the majority of appellant's authority involves a factually different scenario, the situation where potential assets of the decedent were left out of the inventory and the administrator/executor was being compelled to include property in

the inventory. This is true. However, there are several cases where this same procedure was utilized to assert a disagreement or dispute to the executor's inclusion of property in an inventory or to otherwise assert that property claimed to be estate property was not estate property, including a case where it was asserted the property passed upon death to a surviving spouse.

In *Estate of Evans,* 467 Pa. 336, 356 A.2d 778 (1976), our Supreme Court considered a case involving a dispute over ownership of the contents of a safe deposit box. The contents were listed in the inventory and filed by the executor. Appellant claimed they were the subject of an *inter vivos* gift to herself and, therefore, should not be included in the estate, but, rather, should be given to her. The procedural history of the case indicates that the appellant there objected to the inventory, proposed schedule of distribution and final accounting of the executor on the aforesaid basis. There is no mention of a written claim being filed or the need for filing such a claim.

In *Holmes' Estate,* 414 Pa. 403, 200 A.2d 745 (1964), an unusually similar fact pattern was presented. There the decedent, prior to his death, had stock certificates, which had been issued in his and his wife's name, surrendered to the issuing corporation and reissued in his name and those of two nephews. Upon his death the administrator listed the stocks as estate property. The widow responded by filing exceptions to the inventory and final account and asserting ownership. There is no mention of a prior written claim being filed.

In *Kahler Estate,* 6 D. & C.2d 1 (1955), the Orphan's Court of Columbia County considered a challenge to an inventory on grounds that certain estate property had not been included, and also that certain property that had been included was not properly includable, but was instead, entireties property which passed to the surviving spouse; the exact issue raised here. The issues were raised, according to the history outlined in the case, by the filing of a petition for citation on the executrix to file a supplemental invento-

ry. This petition was filed in response to the executrix's filing of an inventory believed to be in error. No indication for the need to file a claim is included in the opinion despite several pages of text devoted to procedural matters.

Perhaps no argument can raise as much doubt as to the majority's position than the examination of what could have legitimately transpired had appellant simply chosen a different approach to the dispute. As executrix of the estate it was appellant's duty to prepare and file an inventory and appraisement. Appellant could have asserted her claim of ownership in a negative fashion by simply regarding the property as hers by survivorship and excluding them from the inventory. Then had anyone, including appellee, questioned her right to the certificates, they would have been forced to file a petition to file supplemental account or to lodge an objection to the account at which time there would have been a hearing to determine title. Since she would not have been filing a claim against the estate for the property there would have been no need to file a written claim at all. From all appearances, this is exactly what had transpired in numerous reported cases. For instance, *Estate of Miller*, 464 Pa. 323, 346 A.2d 761 (1975), involved a situation where the executor sold fifty thousand dollars ($50,000.00) worth of stock which had been owned by the decedent prior to his death. The executor claimed the proceeds had been the subject of a *inter vivos* gift. When the proceeds of the sale had not been included in the first and final account, a co-trustee filed objections to the account which resulted in court proceedings to determine ownership of the proceeds at the time of decedent's death. Similarly, in *In Re Estate of Donsavage*, 420 Pa. 587, 218 A.2d 112 (1966), the decedent's widow, in response to the filing of an inventory which failed to include stock of various companies which had been owned by the decedent, filed a petition for citation upon the personal representative to show cause why she should not file a supplemental inventory including the stock which the personal representative alleged was the subject of an *inter vivos* gift.

I do not believe that a slight change in procedural approach should have such a diverse effect on the status of appellant's claim of ownership. There should be a reasonable amount of symmetry with regard to legal rights, and no sound rule of law would be capable of blatant manipulation which would appear possible in the present factual context. If there exists an acceptable reason why appellant's claim of ownership would remain valid by her exclusion of the certificates from the inventory but would be considered invalid by including them, I am not aware of it.

The majority's focus on what they believe to be an inordinate delay on the appellant's part in the filing of an inventory seems to me to be nothing more than a smoke screen. True, there was a delay which would seem lengthy. However, had any interested party felt truly prejudiced by the delay they could have petitioned the court to force appellant to file the account. Also, the majority's focus on the appellant's change in position, having originally listed the certificates as estate property then asserting ownership of them, is similarly without relevance. Appellant is not an attorney and could hardly be expected to understand the nature of her interest in the certificates and could have easily been under certain legal misapprehensions regarding them.[1] Furthermore, as an administratrix of the estate it would not necessarily be inconsistent for her, in her administrative capacity, to list the certificates as estate assets and

---

1. The majority responds to this point by asserting that appellant was represented by counsel from the outset of the estate's administration. However, it appears that the majority is mistaking the attorney for the estate as appellant's attorney. In support of their position, the majority states that appellant paid herself a substantial administrator's fee and a counsel fee of the same amount to her lawyer. This statement is contradictory upon its face. If the attorney referred to was paid a fee from estate assets, the attorney in question would almost certainly be regarded as an attorney for the estate, not appellant's personal attorney, and owe a duty of zealous representation to the estate. Thus, to the extent there was a conflict between appellant's right as administrator and as surviving spouse, the interest of the attorney would be contrary to the interest of appellant as surviving spouse. Clearly, under the present facts, the attorney for the estate would have an adverse interest to appellant's right as a surviving spouse and appellant cannot be regarded as having been represented, in personal interest, by counsel from the beginning of administration.

then turn around and claim them, acting in her own self interests, as a survivor. In fact, given that the certificates were titled in decedent's name alone at the time of his death, this may have been the most legally expedient approach to take in keeping with her fiduciary duty as administratrix of the estate.[2]

Particularly in the absence of a demonstrated prejudice, I cannot understand the majority's apparent willingness to deprive a widow of what may possibly be her rightful property, or at least an opportunity to prove that it belongs to her, without offering something of more legal soundness to support their position. The lone citation of a factually inapposite case is simply, in my opinion, insufficient.

For the above reasons, I dissent.

---

2. The majority's response to this point appears to demonstrate a misunderstanding of the nature of the duty owed the estate. The dilemma facing appellant is the fact that she was put in a position of wearing, figuratively speaking, two hats. On the one hand she was administratrix of the estate, on the other she was the surviving spouse who was allegedly the victim of an attempt to secrete entireties property by the decedent. It was this conflict of positions that ultimately led to her removal as administratrix. However, until that removal, her duty as an administratrix, at the very least, arguably required her to list the certificates as estate property, because, upon their face, they bore only the name of the decedent. However, in protection of her own self interest, she, becoming aware of the source of the certificates, had, and still has, a substantial argument that the certificates are hers by survivorship, notwithstanding the fact that they bore only the decedent's name. Thus, contrary to the assertion of the majority, it would more likely have been viewed a breach of her fiduciary duty if she, as administratrix, had failed to include the certificates in the original tax return. Certainly, such an effort to exclude the certificates would have likely been met with opposition by both the taxing authorities and interested heirs, including the decedent's father.