668 A.2d 120

UNITED NATIONAL INSURANCE COMPANY, Appellant,

v.

J.H. FRANCE REFRACTORIES COMPANY, The Van Brunt
Company, Mineral Industries, Inc. and Green Point Fire
Brick Company, Appellees.

Supreme Court of Pennsylvania.

Argued Oct. 19, 1993.

Decided Nov. 29, 1995.

Alexander Kerr, Elizabeth W. Fox, Andrew S. Abramson, for U.N.I. Co., Philadelphia, for Appellant.

Mark D. Turetsky, Lisa D. Stern, for J.H. France et al., for Norristown, Appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

NIX, Chief Justice.

Appellant, United National Insurance Company ("United"), appeals from an Order of the Superior Court affirming an Order of the Court of Common Pleas of Philadelphia County. The court of common pleas entered a compulsory nonsuit against United in an action seeking rescission of an insurance policy it had issued to Appellees, J.H. France Refractories Company, The Van Brunt Company, Mineral Industries, Inc., and Green Point Fire Brick Company ("France" or "Appellees"). *United Nat'l Ins. Co. v. J.H. France Refractories Co.,* No. 5623, October Term 1987 (C.P. Philadelphia June 6, 1991). While the court found that United met all the elements required to rescind the policy based on fraud, the court nonetheless entered the nonsuit because it found United's action barred by the two-year statute of limitations for fraud provided in 42 Pa.C.S. § 5524(7). *Id.*

On appeal, the Superior Court affirmed, finding that 42 Pa.C.S. § 5501(c)[1] permitted the trial judge to determine the timeliness of Appellant's equity action based solely on the statute of limitations for fraud, without regard to the applica-

---

1. 42 Pa.C.S. § 5501(c) provides that "[t]his chapter [Chapter 55, relating to limitation of actions] is applicable to equitable matters, but nothing in this chapter shall modify the principles of waiver, laches and estoppel and similar principles heretofore applicable in equitable matters."

tion of laches. *United Nat'l Ins. Co. v. J.H. France Refractories Co.*, 417 Pa.Super. 614, 612 A.2d 1371 (1992). Further, the court held that the trial judge correctly determined the date on which Appellant's action accrued, and thus applied the proper statute of limitations. *Id.* at 627–29, 612 A.2d at 1378.

United appealed to this Court, and we granted allocatur. 533 Pa. 646, 622 A.2d 1377 (1993). Because we find that the timeliness of an equitable action may not be determined based solely on the applicable statute of limitations, we reverse the Order of the Superior Court for the reasons that follow.

The undisputed facts of this matter reveal that in May of 1982, one of Appellees' officers contacted its insurance agent at Main America Agency to obtain $5,000,000 of liability insurance coverage. *United National,* No. 5623, October Term 1987, Finding of Fact No. 2(a) (C.P. Philadelphia June 6, 1991). Appellees, manufacturers of various refractory products such as fire brick and related items, sought this coverage in addition to $500,000 of primary liability coverage and $5,000,000 of umbrella coverage issued by Allstate Insurance Company and Twin City Fire Insurance Company, respectively. *Id.,* Findings of Fact Nos. 1, 2(a).

Main America then contacted an intermediary company, Tri–State General Insurance Agency, which in turn contacted Doran Excess Underwriters. Doran, a managing general agent for United, had the authority to underwrite and issue policies for United. Before issuing a policy, Doran requested certain information from France, including France's involvement with asbestos. *Id.,* Findings of Fact Nos. (2)(d), (e)(i).

At the time of Doran's request for information, Appellees' officer knew that:

(1) in 1979, France had been sued by an individual named Temple, who claimed that he contracted mesothelioma as a result of exposure to France's asbestos-containing products;

(2) Allstate refused to defend the Temple action because asbestos-related conditions were not covered by its policy;

(3) in 1980 or 1981, France brought a declaratory judgment action against Allstate regarding the Temple matter;

(4) between 1968 and 1972, France had produced a cement containing 26 percent asbestos fiber; and

(5) at least 12 actions had been brought against France alleging injury resulting from exposure to France's asbestos-containing products, and that many of these actions sought damages in excess of $1,000,000.

*See id.,* Findings of Fact Nos. 2(b)(i)–(iv).

Nonetheless, Appellees' application for insurance revealed only two lawsuits involving products of France in 1982; France also claimed that these lawsuits involved only $10,000. *Id.,* Finding of Fact No. 2(e)(iii). Also, in response to the question asking Appellees to specify any incidents indicating exposure to noxious material that occurred prior to the application and which could cause injury during the period of coverage requested by Appellees, Appellees answered "none." *Id.,* Finding of Fact No. 2(e)(iv).[2]

Based on the information supplied by Appellees, Doran issued a binder on Policy No. XTP 11511 issued by Appellant, covering the period from June 3, 1982, to June 3, 1983. *Id.,* Finding of Fact No. 2(f). On July 12, 1982, Doran asked Tri–State for additional information on the two lawsuits mentioned in the insurance application. *Id.,* Finding of Fact No. 2(g). Main America informed Tri–State that one claim was made against Bethlehem Steel and its suppliers, including France, for "some sort of a lung condition" and that France did not believe it was doing business with Bethlehem Steel when the loss was thought to have originated. *Id.* Main America indicated that the second claim was very similar and that "[n]o verdict or evidence that they [France] are involved has been proven to date." *Id.* The insurance policy was then issued on August 4, 1982, for $5,000,000 of excess coverage for the period from June 3, 1982, to June 3, 1983. *Id.,* Finding of Fact No. 2(h).

On June 3, 1983, in response to a request by Doran for renewal information, Tri–State informed Doran that Main

2. Appellees' insurance agent at Main America actually filled out the application, but at the direction of Appellees. *Id.,* Finding of Fact No. 2(e)(ii).

America reported that France had three, not two, products liability cases involving $10,000. *Id.,* Finding of Fact No. 3(i). Further, Doran learned that from 1968 to 1972, France had produced a cement containing 26 percent asbestos fiber. *Id.,* Finding of Fact No. 3(ii).

As a result of this information, Doran forwarded a new policy issued by Appellant, but with an asbestos and occupational disease exclusion attached. *Id.,* Finding of Fact No. 4. France refused to accept this policy. *Id.* On September 12, 1983, Appellant learned from Doran of a claim potentially involving Policy No. XTP 11511. *Id.,* Finding of Fact No. 5. On October 28, 1983, United's then-President wrote to the President of France advising Appellees that United considered Policy No. XTP 11511 "void ab initio" based upon "material misrepresentations in securing these policies." *Id.,* Finding of Fact No. 6.

However, it was not until October 30, 1987, that United filed the present matter, claiming that Appellees had fraudulently misrepresented that there were no asbestos-related claims against them. In response, Appellees contended that the action was barred by the two-year statute of limitations for fraud as well as the doctrines of laches, waiver and estoppel. The matter proceeded to a non-jury trial.

At the close of Appellant's case, France moved for a nonsuit, reiterating its arguments that Appellant's lawsuit was untimely filed. The trial judge agreed, finding that the two-year statute of limitations governing fraud barred Appellant's action. *Id.,* at 440–41. In so holding, the court rejected Appellant's argument that its cause of action accrued in June of 1982, when Appellees first misrepresented their potential asbestos-related liability. *Id.* Appellant had urged this interpretation upon the court because, prior to February 18, 1983, fraud actions were governed by a six-year statute of limitations. *See* 42 Pa.C.S. § 5527(6) (amended 1982). Under section 5527(6), Appellant's action would have been timely.

The court, however, determined that the earliest time Appellant had reason to discover Appellees' fraud was on or

about June 3, 1983, when France revealed certain asbestos-related information on its renewal application. *Id.*, at 438–39. The court concluded that Appellant "should not be permitted to claim that its agent . . . was put on notice of an asbestos-related risk when in fact he was not." *Id.*, at 438–39. The court also did not consider the application of the doctrine of laches or any other equitable doctrines to Appellant's suit.

On appeal to the Superior Court, Appellant contended that the trial court erred in (1) applying the statute of limitations alone rather than the doctrine of laches to evaluate the timeliness of its claim; and (2) applying the discovery rule to evaluate when Appellant's cause of action accrued. *United National*, 417 Pa.Super. at 620, 612 A.2d at 1374. Regarding its first argument, Appellant cited this Court's decision in *Kay v. Kay*, 460 Pa. 680, 334 A.2d 585 (1975), in which we stated that a statute of limitations may not control an equity court's determination of the timeliness of an action, but may only provide guidance in determining, within the context of laches, whether a delay was appropriate. *Id.* at 685, 334 A.2d at 587.

The Superior Court acknowledged that equity courts of this Commonwealth have long evaluated the timeliness of actions by applying the doctrine of laches. *United National*, 417 Pa.Super. at 621, 612 A.2d at 1374. Further, the court noted that, pursuant to *Kay*, it has stated that statutes of limitation do not control in equity actions. *Id.* (citing *In re Francis Edward McGillick Fdn.*, 406 Pa.Super. 249, 594 A.2d 322 (1991), *aff'd in part & rev'd in part*, 537 Pa. 194, 642 A.2d 467 (1994)). However, the court stated that in 1978, the legislature amended 42 Pa.C.S. § 5501, pertaining to statutes of limitation, and added subsection (c), which provides: "[t]his chapter *is applicable to equitable matters*, but nothing in this chapter shall modify the principles of waiver, laches, and estoppel and similar principles heretofore applicable in equitable matters." *Id.* at 624, 612 A.2d at 1376 (quoting 42 Pa.C.S. § 5501(a)).

In the Superior Court's view, when the legislature added section 5501(c), it "withdrew the foundation upon which the

cases cited by [Appellant], which relied on *Kay*, . . . rested."
*United National*, 417 Pa.Super. at 625, 612 A.2d at 1376. The
court further found that the language in section 5501(c) re-
garding equitable principles did not affect its conclusion be-
cause

> this language may be construed to mean that these doc-
> trines continue to apply in equitable matters. In other
> words, contrary to the *Kay* court's statement, a statute of
> limitation *may* control in equity, or, an equity court may
> apply the laches doctrine to determine the timeliness of an
> action before it. In fact, in the years following the amend-
> ment of [section] 5501, our courts have continued to employ
> the doctrine of laches.

*Id.* at 624–25 n. 6, 612 A.2d at 1376 n. 6 (citation omitted).
Therefore, the Superior Court concluded that "[t]he trial court
did not commit an error of law in applying a statute of
limitation to determine the timeliness of [Appellant's] action."
*Id.* at 625, 612 A.2d at 1376.

Turning to the second issue, the Superior Court first reject-
ed Appellant's argument that 42 Pa.C.S. § 5524(7) was inappli-
cable because Appellant sought rescission rather than money
damages. Instead, the court concluded that since section
5524(7) applies to "any action or proceeding sounding in
trespass, including deceit or fraud," this language encompass-
es matters in equity as well as law. *Id.* at 626–27, 612 A.2d at
1377.

Finally, the Superior Court addressed Appellant's conten-
tion that the six-year statute of limitations provided in 42
Pa.C.S. § 5527(6) should apply because its cause of action
accrued in June of 1982, prior to the effective date of the two-
year limitation period for fraud. Appellant argued that since
the misrepresentations actually occurred in 1982 and because
it could have discovered the fraud at that time if it had
exercised due diligence, its cause of action arose upon the
actual receipt of the misinformation. *Id.* at 627–28, 612 A.2d
at 1378.

However, the Superior Court noted that since the discovery rule operates to delay rather than accelerate the commencement of a limitations period, Appellant could not benefit from its own lack of diligence. *Id.* at 628, 612 A.2d at 1378. Therefore, the court agreed with the trial court's determination that the insurer's cause of action accrued in June of 1983.

■ We limited allocatur to two issues. The first issue is whether the timeliness of an equitable action may be determined based solely on the applicable statute of limitations. The second issue is whether the discovery rule may be invoked to determine the accrual of a cause of action when a plaintiff does not seek the protection of the rule. We agree with Appellant that the trial court erred in assessing the timeliness of its action solely with reference to the statute of limitations and therefore reverse.[3]

■ The correctness of the trial judge's reliance on the statute of limitations alone to determine the timeliness of this action depends upon this Court's interpretation of the admittedly confusing language in 42 Pa.C.S. § 5501(c).[4] Enacted in 1978, this section provides that statutes of limitation are "applicable to equitable matters." However, the section further states that "nothing ... shall modify the principles of waiver, laches and estoppel and similar principles heretofore applicable in equitable matters." Therefore, we find it necessary to examine the principle of laches as it existed prior to 1978 to determine if the lower courts were correct in their assessment that section 5501(c) authorizes reliance on statutes of limitation alone in equitable matters.

As the Superior Court observed, the courts of this Commonwealth have traditionally applied the doctrine of laches to determine the timeliness of actions in equity. "The application of the equitable doctrine of laches does not depend upon

3. Because of our resolution of the laches issue, we need not address the issues raised by the application of the discovery rule to this matter.

4. As Appellant correctly notes, since the question of whether laches applies is a question of law, we are not bound by the lower courts' decisions on this issue. *See 2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies,* 507 Pa. 166, 172, 489 A.2d 733, 736 (1985).

the fact that a definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice." *Class of Two Hundred Admin. Faculty Members of State Colleges in Commonwealth v. Scanlon*, 502 Pa. 275, 279, 466 A.2d 103, 105 (1983).

We have observed that, "[i]n the absence of fraud or concealment, it is a general rule that laches follows the statute of limitations." *Silver v. Korr*, 392 Pa. 26, 30, 139 A.2d 552, 555 (1958); *see also Philadelphia v. Louis Laboratories, Inc.*, 201 Pa.Super. 16, 19, 189 A.2d 891, 893 (1963). However, because statutes of limitation are "not controlling in equity," but only "provide guidance in determining the reasonableness of any delay," *Kay*, 460 Pa. at 685, 334 A.2d at 587, this Court has allowed suits in equity to proceed despite significant delays in bringing the action. *See, e.g., Brodt v. Brown*, 404 Pa. 391, 172 A.2d 152 (1961) (seven year delay in bringing action to enjoin defendants from interfering with plaintiffs' use of unopened street); *Crunk v. Mid–State Theatres, Inc.*, 404 Pa. 22, 170 A.2d 858 (1961) (sixteen-year delay in bringing action to compel corporation to issue stock certificate). Likewise, this Court has noted that laches may bar an action even though it would not be barred by the analogous statute of limitations. *See, e.g., Freeman v. Lawton*, 353 Pa. 613, 617, 46 A.2d 205, 207 (1946) (laches may constitute a defense in equity even though action would not be barred at law); *see generally Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946) (since equity "depends on flexibility," a suit in equity may exist even where the analogous cause of action at law would be barred; conversely, a suit in equity may fail even though the analogous statute of limitations would not operate as a bar).

Thus, prior to the enactment of section 5501(c), the "equitable principle" of laches at operation in this Commonwealth was that, although statutes of limitation often provided *guidance* in determining if an action was timely, they did not *control* that determination. In the Superior Court's view, this doctrine is

no longer in force because language in section 5501(c) states that statutes of limitation are applicable to equitable matters.

We find that the Superior Court too lightly dismissed the accompanying language of section 5501(c) to the effect that *"nothing* in this chapter shall modify the principle[ ] of ... laches ... heretofore applicable in equitable matters." 42 Pa.C.S. § 5501(c) (emphasis added). Under 1 Pa.C.S. § 1903, we are bound to construe a statute "according to common and approved usage, and where possible it should be interpreted in a manner so as to give effect to *each and every provision of the Act." Commonwealth v. Hill,* 481 Pa. 37, 43 n. 6, 391 A.2d 1303, 1306 n. 6 (1978) (emphasis added).

Instantly, the courts below did not give effect to every provision of section 5501(c); instead, they essentially ignored the section's "heretofore applicable" language. Yet, consistent with the principle that we must give effect to the full language of a statute wherever possible, it is possible to give meaning to all of the language in section 5501(c). The logical construction of this provision is that, to the extent that equity courts have historically been guided by statutes of limitation, the limitations periods set forth in Chapter 55 are "applicable to equitable matters." However, to give meaning to the "heretofore applicable" language in section 5501(c), we conclude that equity courts may not rely solely on statutes of limitation in determining if a claim is timely.[5]

Therefore, the Order of the Superior Court is reversed, and this case is remanded[6] to the trial court for an evaluation of

5. We are not persuaded by the Superior Court's reconciliation of the language of 5501(c). In the Superior Court's view, section 5501(c) authorizes courts to choose *either* to find the statute of limitations controlling *or* to apply laches to determine timeliness. *United National,* 417 Pa.Super. at 624 n. 6, 612 A.2d at 1376 n. 6. In our view, this interpretation invites abuse of discretion and could raise serious equal protection concerns. Indeed, as Appellant argues, if any case is worthy of the application of laches based on the underlying factual dispute, this is such a case.

6. Appellant argues that since Appellees presented no evidence of prejudice at the trial level, we should order the trial court to reinstate Appellant's action. However, since the trial court did not address the

the timeliness of Appellant's claim according to the doctrine of laches.

LARSEN and PAPADAKOS, JJ., did not participate in the decision of this case.

ZAPPALA, J., files a concurring opinion.

CAPPY, J., joins the majority opinion and the concurring opinion filed by ZAPPALA, J.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case by designation as a senior judge as provided by Rule of Judicial Administration 701(f).

ZAPPALA, Justice, concurring.

I join in the Majority Opinion, as I believe it is a reasonable construction of a poorly drawn statute. The inconsistency between the first clause, making the statute of limitations applicable to equity actions, and the second clause, indicating that nothing in the statute shall "modify the principles of ... laches ... heretofore applicable in equity matters" is readily apparent. I would respectfully suggest that the General Assembly clarify its intention by redrafting this provision.

CAPPY, J., joins this concurring Opinion.

question of prejudice, we find that the appropriate course is to remand this matter to the trial court to make that factual determination.