J-S55019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN W. QUARELLO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KATHRYN M. CLINGER | : | No. 544 WDA 2020 |

Appeal from the Judgment Entered July 31, 2020
In the Court of Common Pleas of Blair County Civil Division at No(s):
2018 GN 3709

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED: MARCH 10, 2021**

John W. Quarello (Appellant) appeals from the judgment entered July 31, 2020, in the Blair County Court of Common Pleas, in this partition action. The trial court granted partition of a property jointly owned by Appellant and Kathryn M. Clinger (Appellee), and awarded Appellee an undivided 100% ownership interest.  On appeal, Appellant contends the trial court erred when it determined:  (1) the six year statute of limitations did not limit Appellee's recovery; (2) Appellee demonstrated the affirmative defense of laches; (3) Appellee was entitled to credit for property taxes she paid during her exclusive possession of the property; (4) Appellee was entitled to owelty for repairs; (5) Appellant abandoned his interest in the property; and (6) Appellant was not

_____

[*] Retired Senior Judge assigned to the Superior Court.

entitled to owelty for the fair rental value of the property. For the reasons below, we affirm.

In its January 2, 2020, opinion, the trial court issued extensive findings of fact, which we summarize, supplemented with the trial testimony, as follows. *See* Trial Ct. Op., 1/2/20, at 3-9.[1] On August 17, 1995, Appellant and Appellee, as joint tenants with the right of survivorship, purchased the subject property — located at 1206 27th Avenue in Altoona, Pennsylvania — from Appellee's grandmother's estate for $30,000. *Id.* at 3. The parties were involved in a romantic relationship, and have a daughter, but never married. N.T. Trial, 10/3/19, at 38, 90. They financed the property with a mortgage from AVCO in the names of both parties. Trial Ct. Op., 1/2/20, at 3. On October 31, 1996, the parties refinanced the mortgage through Mellon Bank in the amount of $63,288.50. *Id.* at 4. Although the mortgage remained in both of their names, the refinanced loan was in Appellant's name only.[2] *See* N.T., Trial, at 46, 83. Over the years, the mortgage was reassigned several

---

[1] The trial court issued three opinions in this case — the first on January 2, 2020, following trial, the second on March 19, 2020, following the reconsideration hearing, and the third, on June 3, 2020, in response to Appellant's Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

[2] Appellee testified they decided not to include her name on the refinanced loan because the bank would have insisted the extra money be used to pay off her loans. *See* N.T., Trial, at 83-84. However, the parties wanted to use the extra money for renovations. *Id.*

times, with Bayview Loan Servicing as the final mortgage holder. Trial Ct. Op., 1/2/20, at 4.

The parties lived in the home together, and shared all expenses, for ten years. Trial Ct. Op., 1/2/20, at 4. Appellant testified that, during that period, he completed several remodeling projects. *Id.* In the summer of 2005, the relationship between the parties deteriorated, and Appellee moved out of the residence with their daughter.[3] *Id.* at 5. During that time, Appellant lived at the property himself and paid the mortgage. *See* N.T., Trial, at 130. The following year, Appellee desired to move back to the house, and hired an attorney since Appellant had changed the locks. *Id.* at 92. Appellant eventually agreed to vacate the home in August of 2006, and Appellee and their daughter moved back in. *Id.* at 94. Appellee "testified that when [Appellant] moved out, he told her that he wanted nothing to do with the property." Trial Ct. Op., 1/2/20, at 5. From August of 2006 until the present, Appellee has remained in exclusive possession of the property. *Id.*

Several months after moving back in, Appellee received a notice of mortgage foreclosure. *See* N.T., Trial, at 97, 132. She testified she had been worried because she was not receiving the mortgage statements, but was unable to obtain any information from the mortgage company because her name was not on the loan. *Id.* at 97. After receiving the foreclosure notice, which indicated the loan was more than $2,500 in arrears, Appellee contacted

---

[3] Appellee testified she asked Appellant to leave the home, but he refused. N.T., Trial, at 91.

a credit counseling service to assist her. *Id.*; Trial Ct. Op., 1/2/20, at 5. However, she was unable to obtain their assistance because Appellant's name was on the loan, and he refused to agree to the financing. *See* N.T., Trial, at 100. Appellee "testified that in order to save the property, she filed for bankruptcy on June 24, 2007 under Chapter 13." Trial Ct. Op., 1/2/20, at 5. Through the bankruptcy proceedings, which lasted until March of 2012, Appellee paid $42,824.08 on the mortgage and arrears. *Id.* at 6; N.T., Trial, at 104.

Appellee testified that sometime in 2007, Appellant contacted her and requested $10,000 "to sign his name off of the deed." N.T., Trial, at 124. However, nothing could be done at that point because the property was included in the bankruptcy proceedings. *Id.* Thereafter, in April of 2012, Appellant's attorney sent Appellee a letter requesting a key to the property for access. Trial Ct. Op., 1/2/20, at 6. The letter requested information "in preparation for the partition action [Appellant] authorized [counsel] to file[.]" N.T., Trial, at 158. Appellee did not respond to that request, and no partition action was filed at that time. *See id.* at 158; Trial Ct. Op., 1/2/20, at 6.

For the next six years, Appellee continued to pay the mortgage, taxes, and all expenses on the property without any assistance from Appellant. Trial Ct. Op., 1/2/20, at 6-7. From 2006 until 2018, Appellee paid a total of $85,564.08 toward the mortgage obligation, and $21,432.80 in property taxes. The parties' daughter, who resided at the property with Appellee, "helped her mother with expenses by giving her . . . $140.00 per month for

- 4 -

approximately 9 years." *Id.* at 6. Appellee also presented evidence at trial of various improvements she made to the property during her exclusive possession. *See id.* at 7.

Appellee testified that in June of 2018, "the mortgage statements stopped coming to the residence and were apparently directed to [Appellant's] residence." Trial Ct. Op., 1/2/20, at 6-7. Although she tried to contact Bayview, it would not provide her with information because her name was not on the loan. N.T., Trial, at 114. She then made one additional payment of $1,000 in October of 2018 because she "wasn't sure what was going on [and] didn't want the house to foreclose." *Id.* at 116. During that time, Bayview was in contact with Appellant seeking payment of the mortgage. Trial Ct. Op., 1/2/20, at 7. In November of 2018, Appellant voluntarily paid the mortgage balance of $5,553.47; he testified he did so because he was being contacted by Bayview and "didn't want to deal with these people" any more. *Id.*; N.T., Trial., at 49.

On December 14, 2018, Appellant filed a civil complaint with two counts — one for partition of the property, and the second for unjust enrichment. Appellant's Complaint, 12/14/18, at 3-5 (unpaginated). Under the second count, Appellant asserted he was entitled to reimbursement for his November 2018 pay-off of the mortgage, as well as "any fair rental value for the property that [Appellee] continues [to] exclusively enjoy." *See id.* at 4-5. On February 19, 2019, Appellee filed an answer with new matter and a counterclaim for partition of the property. *See* Appellee's Answer, New Matter and

Counterclaim, 2/19/19. Appellee asserted that Appellant has abandoned any interest in the property, and should be barred by the doctrine of laches and unclean hands. *Id.* at 6-7 (unpaginated).

The case proceeded to a non-jury trial on October 3, 2019. That same day, based upon the parties' stipulation, the trial court entered an order decreeing that the property is "subject to partition" and "is not capable of division without spoiling the whole." Order, 10/3/19, at 1. *See* Pa.R.C.P. 1557 ("If the court determines there shall be partition because of . . . admission . . . , the court shall enter an order directing partition[.]"). The trial, therefore, focused on the credits owed to each party and any fair rental value. *See* N.T., 10/13/19, at 1. At the conclusion of the trial, the court directed the parties to submit proposed findings of fact and conclusion of law.

Thereafter, on January 2, 2020, the trial court filed an order and opinion, with findings of fact and conclusion of law, determining that Appellee is entitled to "an undivided 100% ownership interest in the subject property." *See* Order, 1/2/20. Appellant filed a motion for reconsideration on January 10, 2020. On January 23rd, the trial court entered an order expressly granting reconsideration and scheduled oral argument for February 24th. Following argument, on March 19, 2020, the trial court entered an order denying reconsideration. Appellant filed a notice of appeal on April 28, 2020, and

timely complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[4]

Appellant raises the following issues on appeal:

[1]   Whether or not the Honorable Trial Court erred when it determined that the six year statute of limitations did not apply to and limit [Appellee's] request for recovery and/or owelty?

[2].   Whether or not the Honorable Trial Court erred when it determined that [Appellant] abandoned or renounced his interest in the home in light of Pennsylvania law that provides no mechanism for a person with perfect title and a fee simple interest in property to abandon that interest?

---

[4] We note Appellant's notice of appeal purported to appeal from the trial court's March 19, 2020, order denying reconsideration.  Thus, on June 17, 2020, this Court issued Appellant a rule to show cause whether the trial court's March 19, 2020, order was a final and appealable order, which disposed of all claims and counterclaims, and whether Appellant properly filed post-trial motions.  *See* Order, 6/17/20.  Appellant responded to the rule on July 1, 2020, and explained that the trial court's January 2nd order was the appealable order, made final when the court disposed of Appellant's post-trial motion for reconsideration on March 19th.  *See* Appellant's Letter Response to Show Cause Order, 7/1/20, at 1 (unpaginated).  Appellant also averred that the trial court's decision disposed of both his claims, as well as Appellee's counterclaim.  *See id.* at 2-3.  Upon our review of the record, we agree.

This Court issued a second order, on July 27, 2020, directing Appellant to praecipe for the entry of judgment on the trial court docket within 10 days. *See* Order, 7/27/20, *citing* ***Brown v. Philadelphia College of Osteopathic Med.***, 760 A.2d 863, 865 n.1 (Pa. Super. 2000) ("[A]n appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions, not from the order denying post-trial motions.") (citation omitted).  Appellant complied with this Court's directive, and judgment was entered in the trial court on July 31, 2020.  Thus, we will consider Appellant's notice of appeal filed after the entry of judgment.  *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

[3] Whether or not the Honorable Trial Court erred when it determined that any delay in the filing of the original Complaint in this matter prejudiced [Appellee] sufficient to support the affirmative defense of laches?

[4] Whether or not the Honorable Trial Court erred when it granted [Appellee] credit for property taxes paid during her time of exclusive possession of the property in light of **Bednar v. Bednar**, 688 A.2d 1200, 1205 (Pa. Super. 1997)?

[5] Whether or not the Honorable Trial Court correctly applied the law regarding the award of owelty to [Appellee] for the replacement of the roof, water line, sidewalk, front porch steps, front porch railing, and tree removal?

[6] Whether or not the Honorable Trial Court erred when it failed to correctly apply the law and award owelty to [Appellant] for the fair rental value of the property when he was excluded from enjoyment and use of the property by [Appellee]?

Appellant's Brief at 6-7.[5]

Preliminarily, we note "[t]he purpose of partition is to afford those individuals who no longer wish to be owners the opportunity to divest themselves for a fair consideration." **Beall v. Hare**, 174 A.2d 847, 849 (Pa. 1961). An action seeking partition of property is an equitable proceeding. **Appeal of Kelsey**, 5 A. 447, 449 (Pa. 1886), **aff'd sub. nom. Church v. Kelsey**, 136 U.S. 633 (1890). When considering a such a decision, our review is guided by the following:

> [T]he scope of appellate review of a decree in equity is particularly limited, and . . . the findings of the [trial court] will not be reversed unless it appears that the [court] clearly committed an abuse of discretion or an error of law. Where credibility of witnesses is important to a determination, the findings of the [trial court] are entitled to particular weight

---

[5] We have reordered Appellant's claims for purposes of disposition.

> because the [court] has the opportunity to observe their
> demeanor.
>
> We can review freely conclusions of law or factual determinations
> that merely are derived from facts supported by the evidence.
> Thus, we are limited to a determination of whether there was an
> error of law, and the trial court's conclusions will not be disturbed
> unless they are not supported by the evidence or unless the court
> clearly abused its discretion.

*Marchetti v. Karpowich*, 667 A.2d 724, 726 (Pa. Super. 1995) (citations omitted).

In *Kapcsos v. Benshoff*, 194 A.3d 139 (Pa. Super. 2018), this Court explained that a partition action involves two orders: the first "directs partition of the parties' legal interest into severalty[,]" and the second divides the partitioned property or distributes the proceeds from the sale of the property. *Id.* at 141-42. In the present case, the parties stipulated to the entry of the first order — they agreed the property should be partitioned. *See* N.T., 10/3/19, at 1-2. They also stipulated that the property "was not capable of division without prejudice to or spoiling the whole." *Id.* at 3-4. Thus, the trial court's October 3, 2019, order is not at issue. *See* Order, 10/3/19.

The *Kapscos* Court further explained that when a property cannot be divided without prejudice to the whole:

> [T]he court may give the whole [property] to one party and order
> that person to pay the other parties for their respective shares.
> *See* Pa.R.Civ.P. 1562. In this scenario, one party gets an order
> of conveyance granting undivided title to the whole property
> (which is recorded), and the other party receives a cash buy-out,
> known as "owelty." *Id.*
>
> The court calculates the owelty based upon the equities of
> what everyone invested in the land. It takes those investments

and then divides them by each parties' fractional interest in the property, as determined in [the first order].

*Kapcsos* 194 A.3d at 143 (some citations omitted). In the present case, the trial court awarded "the property in its entirety" to Appellee, and determined Appellant is "guilty of laches and is now estopped from claiming a share of the property." *See* Trial Ct. Op., 1/2/20, at 12-13; Trial Ct. Op., 3/19/20, at 5. With this background in mind, we address Appellant's claims on appeal.

In his first issue, Appellant contends the trial court erred when it failed to limit Appellee's request for recovery and owelty pursuant to the six-year statute of limitations.[6] *See* Appellant's Brief at 17. He argues all of Appellee's claims for owelty in her counterclaim that "pre-date the filing of the Complaint by more than six (6) years" are barred by the statute of limitations. *Id.* at 18. Thus, he asserts the trial court erred when it "over-credited" Appellee for payments she made for taxes and repairs/improvements prior to December 14, 2012 (six years before the complaint was filed). *Id.* at 18.

Appellant correctly states that "actions for contribution in a partition suit are subject to a six-year statute of limitations." *See* 42 Pa.C.S. § 5527(b) ("Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years."); *Bednar*, 688 A.2d at 1204. Nevertheless, here, the trial

---

[6] Although neither party raised the statute of limitations defense in their pleadings, the trial court permitted both parties to orally amend their pleadings at trial. *See* N.T., 10/3/19, at 70-71.

court did not apply the statute of limitations because it concluded Appellant's

claim is "barred by laches." Trial Ct. Op., 3/19/20, at 5. The court opined:

> [T]he statute of limitations does not require us to ignore the totality of the circumstances in determining an equitable result as far as apportioning ownership of the property. Ownership of the property fairly belongs to [Appellee], as she has solely maintained and paid for the property since 2006. When [Appellee] assumed total financial responsibility for the property, it was encumbered by a significant mortgage responsibility which she managed to take care of with rather heroic efforts. To say that only her past six (6) years of efforts counts as far as the Court's determining an equitable result for portioning the property is not how we find the statute is to be applied.

*Id.* at 5-6.

We agree. Chapter 55 of the Judicial Code sets forth the relevant

limitation periods for civil and criminal actions, providing, generally, that "an

action . . . must be commenced within the time specified in or pursuant to this

chapter[.]" 42 Pa.C.S. § 5501(a). While the limitation periods in Chapter 55

apply to equitable matters, Section 5501(c) explicitly states that "[n]othing in

this chapter shall modify the principles of waiver, **laches** and estoppel and

similar principles **heretofore applicable in equitable matters**." 42 Pa.C.S.

§ 5501(c) (emphasis added). In *United Nat. Ins. Co. v. J.H. France*

*Refractories Co.*, 668 A.2d 120 (Pa. 1995), the Pennsylvania Supreme Court

explained that "prior to the enactment of section 5501(c) [in 1978], the

'equitable principle' of laches at operation in this Commonwealth was that,

although statutes of limitation often provided **guidance** in determining if an

action was timely, they did not **control** that determination." *Id.* at 125. Thus,

prior to the enactment of Section 5501(c), the Supreme Court "allowed suits in equity to proceed despite significant delays in bringing the action" and, in other cases, found that "laches may bar an action even though it would not be barred by the analogous statute of limitations." *Id.* at 124-25. Accordingly, the Court determined that "to give meaning to the 'heretofore applicable' language in section 5501(c), . . . equity courts may not rely solely on statutes of limitation in determining if a claim is timely." *Id.* at 125. Thus, "[f]or an action in equity, the applicable statute of limitations is used only as a frame of reference to evaluate any purported delay in support of a claim of laches." *In re Estate of Moskowitz*, 115 A.3d 372, 379 (Pa. Super. 2015) (footnote and citations omitted).

Here, Appellant insists that, in considering Appellee's counterclaim for owelty, the trial court should not have considered any of her contributions to the maintenance of property before December of 2012. *See* Appellant's Brief at 18. However, he fails to acknowledge that the court determined **his partition action** was barred by laches; thus, its award of relief to Appellee was a consequence of his untimely request for owelty, not the merits of Appellee's counterclaim. No relief is warranted.

Next, Appellant argues the trial court erred when it found he abandoned his interest in the property. Appellant's Brief at 21. Relying on *Pocono Springs Civic Ass'n, Inc. v. MacKenzie*, 667 A.2d 233 (Pa. Super. 1995), Appellant asserts that there is no authority in Pennsylvania that "allows for the abandonment of real property when owned in fee simple with perfect title."

Appellant's Brief at 22. Furthermore, Appellant insists that even if the court credited Appellee's claim that Appellant told her "he wanted nothing to do with the property, this statement alone is wholly inadequate to relieve [Appellant] of his interest in the property." *Id.* at 24.

In concluding Appellant abandoned his interest in the property, the trial court explicitly credited Appellee's testimony "concerning statements made to her by [Appellant] that he wanted nothing to do with the property." Trial Ct. Op., 3/19/20, at 2-3. *See Marchetti*, 667 A.2d at 726. To the extent Appellant insists his statements alone were insufficient to establish abandonment, we note the trial court also found Appellant's "subsequent behavior [that] was consistent with those statements." Trial Ct. Op., 3/19/20, at 3. The court explained:

> Since the time of his departure in 2006, [Appellant] did not assume any responsibility for his one-half share of the loan payments, property taxes or upkeep of the property. While [Appellee] did have exclusive use of the property, she also had exclusive responsibility for the property and paid [Appellant's] half of these expenses for 10 years without receiving any contribution from him. It was not until the mortgage holder started pressing him for payment in the Fall of 2018 that [Appellant] took any financial responsibility for the property, and from his own testimony it was not out of any sense of responsibility, but rather to stop the creditors from calling him.

*Id.* Furthermore, the court emphasized that when Appellee moved back to the property in 2006, the mortgage was in arrears, and she had to file for bankruptcy to save the property from foreclosure. *Id.* Moreover, despite the fact that she was approved for consumer credit counseling, Appellee was

unable to "complete the process without the cooperation of [Appellant] as his name was on the loan," and he refused to cooperate. *Id.* Indeed, the court concluded "[t]he fact that the home is now paid in full and has no liens against it has very little to do with [Appellant]." Trial Ct. Op., 1/2/20, at 12. Our review of the record reveals ample support for the court's findings.

In addition, we find the facts in ***Pocono Springs*** distinguishable. In that case, the appellants were the sole owners of a vacant lot in appellee's development. ***Pocono Springs Civic Ass'n***, 667 A.2d at 234. When they were unable to sell the lot, they abandoned it, and claimed they were "relieved from any duty to pay the association fees sought by appellee." *Id.* at 234-35. The trial court disagreed, and this Court affirmed on appeal, concluding:

> [A]ppellants have not relinquished their rights, title, claim and possession of their lots. They remain owners of real property in fee simple, with a recorded deed and 'perfect' title. Absent proof to the contrary, possession is presumed to be in the party who has record title.

*Id.* at 235.

Thus, in ***Pocono Springs***, the appellants argued they abandoned their own property in order to avoid paying fees. ***See Pocono Springs Civic Ass'n***, 677 A.2d at 234-35. Here, however, Appellee's claim that Appellant abandoned their jointly owned property was made in order to prevent him from obtaining a financial windfall. Thus, Appellant's second claim is meritless.

Next, Appellant argues the court erred or abused its discretion when it determined his claim was barred by laches. Appellant's Brief at 25.

Specifically, he contends Appellee presented no evidence that she was prejudiced by his alleged delay in filing the partition action. *Id.* at 27. Rather, he insists "any delay prior to 2012 was caused by [Appellee] herself, as her bankruptcy prevented any action being taken against the property." *Id.* Thereafter, the letter his counsel sent to her in 2012 put her "on notice that he remained steadfast in his desire to have access to or partition the property." *Id.* at 28. Moreover, Appellant asserts Appellee "took no action of her own to resolve the matter." *Id.* at 29. Instead, Appellant contends:

> [A]s long as [Appellee] avoided the question, she continued to exclusively enjoy the property at no additional cost to her. Avoidance provided her with a profit.

*Id.*

"The doctrine of laches is an equitable bar to the prosecution of stale claims[.]" *Fulton v. Fulton*, 106 A.3d 127, 131 (Pa. Super. 2014).

> The question of whether laches applies is a question of law; thus, we are not bound by the trial court's decision on the issue. The question of laches itself, however, is factual, and is determined by examining the circumstances of each case.

*Id.* (citations omitted). In order for laches to bar the prosecution of a claim, the defendant must demonstrate the following elements: "(1) a delay arising from [the plaintiff's] failure to exercise due diligence; and (2) prejudice to the [the defendant] resulting from the delay." *Kern v. Kern*, 892 A.2d 1, 9 (Pa. Super. 2005). Sufficient evidence of prejudice may include "that a witness has died or become unavailable, that substantiating records were lost or destroyed, or that the defendant has changed his position in anticipation that

the opposing party has waived his claims." ***Fulton***, 106 A.3d at 131 (citation omitted). The Pennsylvania Supreme Court has explained:

> Prejudice may be found where there has been some change in the condition or relations of the parties which occurs during the period the complainant failed to act.

***Stilp v. Hafer***, 718 A.2d 290, 294 (Pa. 1998).

In the present case, the trial court concluded Appellant's claim was barred by laches. The court found that Appellant "did not assume any responsibility for his one-half share of the loan payments, property taxes or upkeep of the property" since he left the property in 2006. Trial Ct. Op., 3/19/20, at 3. Rather, Appellant — without any notice to Appellee — allowed the property to go in mortgage arrears, which forced Appellee to file for bankruptcy in order to avoid foreclosure. ***See id.*** While the court acknowledged that Appellant could not seek partition of the property during the bankruptcy proceedings (from 2007 until 2012), it concluded "the bankruptcy did not prevent [Appellant] from assuming some financial responsibility for the property." ***Id.*** at 4. However, Appellant did nothing, except request a key in April of 2012. ***See id.*** Although Appellee did not respond, Appellant took no action for another six years until he paid off the mortgage in 2018. The trial court noted Appellant "had a financial responsibility, which he purposely ignored and thus expected [Appellee] to shoulder the full financial responsibility for both her share and his share of the property." ***Id.***

With regard to prejudice, the trial court opined:

- 16 -

[Appellee] relied on the statements and behavior of [Appellant] in effectively "washing his hands" of the property and [Appellee] took responsibility for the entirety of the property. [Appellee] relied on the fact that [Appellant] had no interest in the property and she acted in accordance with that reasonable belief to maintain the property to the best of her ability. [Appellant] cannot now come forward and demand his share of the property and expect the Court to ignore the extended period of time that [Appellant] assumed no role in maintaining the property.

Trial Ct. Op., 3/19/20, at 4-5. Thus, the court concluded:

Equity will not allow [Appellant] to benefit from his years of disinterest in the property knowing, or at the very least, presuming that [Appellee] was paying for everything associated with the property. The fact that the home is not paid in full and has no liens against it has very little to do with [Appellant].

Trial Ct. Op., 1/2/20, at 12.

Upon our review of the record, the parties' briefs, and the relevant case law, we detect no basis to disagree with the decision of the trial court. Appellant moved out of the property in 2006. From that time, until late 2018, he made no financial contributions to the mortgage, property taxes, or maintenance. We agree Appellant's 12-year delay in asserting his right to the property "constituted sufficient delay for purposes of the doctrine of laches." *See Fulton*, 106 A.3d at 134 (nine to eleven-year passage of time from when property was conveyed to filing of equity action seeking to set aside conveyances was sufficient delay to establish laches).

Further, we agree with the trial court that the fact Appellant could not seek partition during the bankruptcy proceedings is of no consequence. Appellant refused to assist Appellee when she tried to **avoid** filing bankruptcy, and took no action to assist her in paying the mortgage, taxes or arrears.

Although he did request a key to the property in 2012, he took no further action for six years after she failed to respond to his request. Thus, we conclude, as did the trial court, that Appellant cannot ignore his financial responsibilities for 12 years and then benefit from Appellee's actions to pay off the mortgage.

Furthermore, we agree Appellee demonstrated sufficient prejudice to establish laches. Because of Appellant's complete repudiation of his financial obligation to the property, Appellant was forced to file bankruptcy in order to avoid foreclosure. For the ensuing 12 years, Appellee paid the mortgage, arrears, property taxes, and maintenance costs associated with the property with no contribution from Appellant. Had Appellant promptly asserted a claim for partition or even assisted Appellee when she attempted to obtain credit counseling, Appellee may have avoided filing bankruptcy, which will have a lasting impact on her credit rating. Instead, Appellant waited until the mortgage was almost paid off — and the property increased in value — before asserting his claim. We agree with the trial court that Appellee demonstrated sufficient prejudice as a result of Appellant's failure to assert his rights to the property for 12 years. Accordingly, Appellant's third claim fails.

Next, Appellant contends the trial court erred when it granted Appellee credit for the property taxes she paid from 2006 until 2018, while she was in exclusive possession of the property. *See* Appellant's Brief at 19. Relying upon *Lohr's Estate*, 200 A. 135 (Pa. 1938) and *Bednar*, 688 A.2d 1200, Appellant maintains that in a partition action, "[p]arties are not entitled to

- 18 -

reimbursement for taxes paid voluntarily on behalf of the co-tenant."
Appellant's Brief at 19. Indeed, pursuant to the Local Tax Collection Law,[7] a
joint tenant need only pay "his proportionate part of the amount of taxes due
thereon." 72 P.S. § 5511.12. Thus, Appellant argues Appellee was not
entitled to credit for making payments "she was under no obligation to
make[.]" Appellant's Brief at 21.

Appellee insists, however, the facts in the present case are
distinguishable from those in **Bednar** and **Lohr's Estate**. **See** Appellee's
Brief at 45-50. We agree.

In **Lohr's Estate**, the Pennsylvania Supreme Court held: "To entitle
one to contribution [in a partition action], the payment must be compulsory
in the sense that the party paying was under legal obligation to pay." **Lohr's
Estate**, 200 A. at 136 (citation omitted). Because under the prior local tax
law there was "no joint obligation upon the tenants in common . . . to pay the
whole tax . . . in order to protect his undivided interest," the Court concluded
that any such payment was voluntary, and thus that the payee was not
entitled to contribution. **Id.**

In **Bednar**, this Court relied upon the holding in **Lohr's Estate** when it
concluded two co-tenants, who had paid taxes on property they jointly owned
with a third co-tenant, were not entitled to contribution from the co-tenant
because they "were under no legal obligation to pay [the co-tenant's]

_____

[7] 72 P.S. §§ 5511.1–5511.42.

proportionate share of property taxes." ***Bednar***, 688 A.2d at 1203-04. However, the co-tenants in ***Bednar*** argued that their payment was not voluntary because the mortgage on the property "required the payment of property taxes[; thus, they] were legally compelled by the mortgage's terms to pay the property taxes." ***Id.*** Without deciding if the terms of the mortgage "converted the voluntary payment of a co-tenant's proportionate share of property taxes into a legal obligation," this Court concluded that the co-tenants were not entitled to contribution in any event because "actions for contribution in a partition suit are subject to six-year statute of limitations" and the mortgage in that case had been paid off for more than six years prior to the filing of the partition action. ***Id.*** at 1204.

Here, the mortgage required the "Mortgagor" — in this case both parties — to "pay when due all taxes, assessments, levies, and other charges on or against the Mortgaged Property[.]" Mellon Bank Mortgage, 10/31/96, at 1 (Appellee's Ex. 1). The document further provided that upon a breach of any of the terms, "Mortgagee may foreclose upon the Mortgaged Property[.]" ***Id.*** at 3. This mortgage was not paid off until 2018. Thus, we agree with Appellee that she was legally compelled by the terms of the mortgage to pay all property taxes, and was entitled to credit in the partition action for the taxes she paid for 12 years. Accordingly, Appellant is entitled to no relief on this claim.

In his fifth claim, Appellant contends the trial court erred when it awarded owelty to Appellee for repairs she made to the property during her

time of exclusive possession. Appellant's Brief at 30. Specifically, he asserts Appellee "did not present any evidence that any of these repairs were necessary to safeguard or preserve the residence." *Id.* at 31.

In *Bednar*, this Court explained:

"As a general rule, where a cotenant places improvements on the common property, equity will take this fact into consideration on partition and will in some way compensate him for such improvements, provided they are made in good faith and are of a necessary and substantial nature, materially enhancing the value of the common property."

*Bednar*, 688 A.2d at 1205 (citations omitted). In that case, this Court affirmed the ruling of the trial court, which declined to give co-tenants credit for certain improvements they made to the residence. *See id.* at 1204-06. We concluded the claim failed for several reasons: (1) the co-tenants' counterclaim did not include a demand for improvements; (2) the co-tenants failed to prove the improvements were made within the statute of limitations; **and** (3) the co-tenants "failed to provide any evidence concerning the degree to which the improvements enhanced the property value." *See id.*

Conversely, in the present case, the trial court, sitting as fact finder, determined Appellee was entitled to credit for certain improvements she made, which were "necessary . . . to preserve, safeguard and protect the integrity of the property[,]" including a repair of the sewer, a new roof, replacement of a water line, a new sidewalk, front steps and railing, and the removal of a tree struck by lightning. *See* Trial Ct. Op., 1/2/20, at 10. Appellee testified regarding the necessity of these repairs/improvements, and

provided detailed documentation of the costs. **See** N.T., 10/3/19, at 120-23. We detect no abuse of discretion on the part of the trial court in determining these repair/improvements were made in good faith, and necessary to preserve or enhance the value of the property.[8] **See Bednar**, 688 A.2d at 1205; **Marchetti**, 667 A.2d at 726.

Lastly, Appellant insists the trial court erred when it failed to award him owelty for the fair rental value of the property during the time Appellee was in exclusive possession. Appellant's Brief at 32. He maintains he established "a fair rental value of . . . $950 per month" through the testimony of real estate appraiser Matthew Stultz, which the trial court improperly rejected. **Id.** at 35.

Pursuant to 68 P.S. § 101, "in case of partition of . . . real estate held in common . . . , the parties in possession shall have deducted from their distributive shares of said real estate the rental value thereof to which their co-tenant or tenants are entitled." 68 P.S. § 101. Accordingly,

> Two requirements must be satisfied before recovery of the fair rental value of the premises will be permitted: (1) the complaining party must show he is not in possession of the premises; and (2) it must be shown that the remaining tenant in common occupies exclusive possession of the premises.

---

[8] In fact, we note that Appellee also requested credit for kitchen countertops she installed, but the court did not included that cost in her eligible credits. **See** Trial Ct. Op., 1/2/20, at 7, 10.

*Sciotto v. Sciotto*, 288 A.2d 822, 823–24 (Pa. 1972). The *Sciotto* Court explained that the party seeking recovery of the fair rental value need not prove they were excluded from the property. *See id*. at 824.

Although Appellant may have been entitled to recover for the fair rental value of the property under other circumstances, here, the trial court determined Appellant "financially abandoned" the property and his claim for owelty was barred by laches. *See* Trial Ct. Op., 3/19/20, at 4-5. Thus, Appellee asserts, and we agree, that Appellant's request for rental income is similarly barred.[9] *See* Appellee's Brief at 39-40.

Nevertheless, even if we were to address this claim on the merits, we would conclude no relief is warranted. The trial court found the testimony regarding a fair rental value for the property was "not convincing[,] seemed speculative and was based on inaccurate information." Trial Ct. Op., 3/19/20, at 6. In particular, the court noted that the appraiser ignored the credible testimony of Appellee that the property lacked a working furnace. *See id.* The trial court opined: "This fact alone renders the testimony offered by Mr. Stultz to be of no value to the Court on the issue of fair rental value." *Id.*

As noted *supra*, in an equity action, we defer to the trial court's credibility determinations, and will not disturb the court's factual finding "unless they are not supported by the evidence or . . . the court clearly abused

---

[9] It is well-settled that we may affirm the ruling of the trial court on any basis. *Wilson v. Parker*, 227 A.3d 343, 347 n.3 (Pa. Super. 2020).

its discretion." *Marchetti*, 667 A.2d at 726. Our review of the record reveals ample support for the court's findings. Stultz acknowledged that his first appraisal, dated August 8, 2019, was limited to the fair market value of the property. *See* N.T., 10/3/19, at 25; Residential Appraisal, Joint Ex. 2. He then provided, based upon Appellant's request, an amended appraisal, which included a fair rental value of the home, without any rental comparisons or additional information. *See* N.T., 10/3/19, at 24-25; Amended Appraisal, Appellant's Exhibit 2 at 5 (unpaginated) (deeming a fair rental value of $950 per month based on "comparable rental single family homes with 4 bedrooms and similar square footage"). Stultz conceded the updated appraisal "should've been more detailed," but he "was under the impression it was a time sensitive" matter. N.T., 10/3/19, at 25. The day before trial, Stultz provided several rental comparisons, and referred to them during his testimony. *See id.* at 6-7, 17-18. However, he testified that his appraisal was based on the property having a functioning furnace, despite Appellee's testimony that the furnace had not been operating since she moved back to the property in 2006.[10] *See* N.T., 10/3/19, at 32, 87-89. Accordingly, because the trial court's findings are supported by the record, Appellant's final claim fails.

---

[10] Appellee testified that, because she did not have the funds to replace the furnace, she installed a gas heater in the front room to heat the first and second floors, and her daughter used an electric heater for the third floor. *See* N.T., 10/3/19, at 89.

Judgment affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/10/2021